PEOPLE OF PORTO RICO, Plaintiff and Appellee, *v.* RAMÓN
    CABRERA-HERNÁNDEZ and FRANCISCO RINCÓN-PLUMEY, De-
    fendants and Appellants.

Nos. 2498 and 2510. Argued May 22, 1925.—Decided July 10, 1925.

PRACTICE OF MEDICINE — UNLAWFUL PRACTICE OF MEDICINE — PHYSICIAN'S DI-
    PLOMA.—The exceptions established in section 3 of the Act of March 12, 1903
    (p. 121), as amended by Act No. 79 of 1911 (p. 247), is applicable only
    to a person who, without possessing a medical diploma, assumed the position
    of physician in the community and was there recognized as a doctor and
    openly practiced the profession for five years prior to 1911 as if he had
    a diploma.

District Court of Humacao, Pablo Berga, J. Judgments convicting
    defendants of unlawful practice of medicine. *Affirmed.*
L. *Muñoz Morales* and R. *Martínez Nadal* for the appellants. *José
    E. Figueras,* Fiscal, for the appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the
court.

These appeals were heard jointly and will be disposed
of in a single opinion.

Ramón Cabrera Hernández and Francisco Rincón. Plu-
mey were charged with unlawfully practicing medicine, the
former in Caguas in December of 1924 and the latter in
San Lorenzo in November and December of 1924, both mu-
nicipalities being within the judicial district of Humacao.
After trials the court found the defendants guilty of vio-
lating section 9 of Act No. 73 of July 30, 1923 (p. 550), as
amended by Act No. 15 of July 1, 1924 (p. 124), and sen-
tenced each to pay a fine of $50 or in default thereof to
one day in jail for each dollar not paid. Cabrera and Rin-
cón appealed to this court, assigning and arguing at length,
both in writing and orally, the following:

1. The court erred in finding that the defendants were
practicing medicine unlawfully.

2. The court erred in holding that the doctrine laid down
by the Supreme Court in the case of *People v. Rodríguez,*
33 P.R.R. 812, is not applicable to these cases.

There is no question about the proof of the acts charged

in the complaints. It is evident that at the times and places therein stated the defendants prescribed for patients, charging for their prescriptions and representing themselves to be physicians, and there is no doubt that the defendants have no diplomas from a university or medical school and are not authorized by the Board of Medical Examiners of Porto Rico to practice medicine in the Island; but the defendants contend that they acted by authority of law and not unlawfully.

The pleadings, the evidence and the legal question raised ·show that these two cases are the direct consequence of the decision of this Supreme Court in the case of *People* v. *Rodríguez, supra.* In all probability there are others awaiting this second decision and for this reason it is the duty of this court to clarify as far as possible a situation of real importance to the community as a whole.

The statute under which the defendants were convicted reads as follows:

"Section 9.—Any person charged with and convicted of illegally practising medicine or surgery, osteopathy, or any of the branches of these professions or of their allied professions, or obstetrics, in violation of the provisions of this Act, shall be guilty of misdemeanor for each violation and shall be punished by a fine of not to exceed two hundred (200) dollars or by confinement in jail for a term of not to exceed ninety days, or by both penalties in the discretion of the court; *Provided,* That for subsequent violations the punishment shall necessarily entail confinement in jail. For the purposes of this Act any person who without legal authorization adds to his name the letters M.D. (Doctor of Medicine) or who advertises or passes himself as a physician, surgeon, osteopath. optometrist, *practicante,* midwife, nurse (male or female), or who renders services as such, or who intervenes in the treatment of diseases or physical defects, whether or not such person receives remuneration for his services, shall be, considered as illegally practising medicine and surgery, osteopathy or any of the branches of these professions, or obstetrics, or any of the professions allied to medicine and surgery." (Laws of 1924, pp. 124, 126).

The laws then in force were analyzed in the said case

of *People* v. *Rodríguez,* and we have nothing to add to that decision. Nor are we convinced that we should modify the opinion of the majority of the court in that case that it was the intention of the Legislature to authorize a continuation of the practice of medicine in Porto Rico by any person who had actually practiced the profession for a period of five years prior to March 9, 1911, whether or not he had a college diploma and whether or not he had been authorized to practice by the Board of Medical Examiners. The Legislature recognized the existence of and legalized a state of facts, and notwithstanding the fact that its intention was so interpreted by a majority of this court and that it had the power and an opportunity to modify the law, it has done nothing and its silence may be considered to mean that its intention was properly and faithfully interpreted.

This being so, the inquiry in these cases is whether the defendants proved that they had practiced medicine in Porto Rico for five years prior to March 9, 1911.

The answer to this question must be ascertained from the meaning of the phrase ''to practice medicine'' and from an examination of the evidence.

In our opinion the state of facts recognized by the Legislature was that of an actual status of physician in the community. According to the Dictionary of the Spanish Academy ''A physician is one lawfully authorized to practice medicine,'' and ''Medicine is the science and art of preventing and curing ailments of the human body and especially internal ones.''

Since 1804 physicians in all continental and insular Spanish territory have been classified as medical surgeons, medical scientists, doctors of medicine and surgeons. Surgeons were subdivided into surgeons of the first class, or those called medical surgeons, surgeons, licentiate surgeons and doctors in medical surgery; surgeons of the second class, which included the so-called college surgeons and the ancient romancists; surgeons of the third class, or phlebot-

omists, and surgeons of the fourth class, who were all of the other purely practical professors. There were also the medical practitioners under the plan of 1843 and the physicians of the second class referred to in the Royal Decree of December, 1849, who studied the elementary principles of medicine and surgery and devoted some time to their practice, but these were successively abolished. Besides, there were known as trained nurses prior to the Act of 1857 and as first aid practitioners certain subordinate assistants, who, not being physicians, were not included in the existing classes of surgeons, but still, as they had taken a course and passed an examination, had diplomas which carried with them certain limited rights. The said Act of 1857 created a class of physicians called qualified medical surgeons, equal to that of the medical practitioners of 1843. Other laws were passed until by the Act of October 25, 1868, with reservation of the rights acquired under previous laws, there were recognized as physicians only doctors or persons licensed to practice both sciences, medicine and surgery, who had as assistants practitioners for the purpose of administering the medicines by them prescribed. The course of physician and surgeon was taken at the universities, which were government institutions, in accordance with a plan approved by the Legislature. See Alcubilla's Dictionary of Spanish Administration (4th ed.), volume 7, page 220 et seq.

Such was the legal situation in Porto Rico on this matter at the change of sovereignty. A medical surgeon in Porto Rico was generally known as a doctor, although he may have been a licensed physician, and his university studies were presupposed. They did not come only from Spain. Many of them studied in France, Belgium and the United States and were authorized by the Spanish Government to practice the profession.

The tendency of all peoples as they progress is to regulate the practice of the professions by making the require-

ments greater as time passes in order that professionals may be up to date in their respective arts or sciences and may thus render their services to the community with greater safety.

After the change of sovereignty and the organization of the Civil Government of the Island the Legislature passed the Act of March 12, 1903 (Comp. sec. 1911), providing for the organization of a board of medical examiners. Taking its provisions as a whole it is observed that the firm intent of the Legislature was to authorize the practice of medicine and surgery in this Island only by those who had studied in reputable colleges or universities and also passed examinations.

What brought about the proviso included in section 3 of the Act of 1903 as amended in 1911 (Comp. sec. 1713) that was construed in the case of *People* v. *Rodríguez, supra?*

At the hearing on these appeals several causes were stated. Some reason must have existed. Perhaps the Legislature knew that certain persons were practicing medicine in the Island who although perfectly qualified lacked one or more of the statutory educational requisites and desired to legalize their status. Such being the case, the only possible inference is that the legislators had in mind those persons who had assumed the position of physicians in the community and who were there recognized as doctors, holding public offices as such and being considered by their professional colleagues as equals; that is, actual physicians openly practicing their profession. A pharmacist, a first aid practitioner, a minor surgeon, a quack doctor, can not be considered to have been the physicians and surgeons *de facto* which the proviso contemplated.

Such was the case, according to our weighing of the evidence, of doctor Rodríguez Alberty, who in the community in which he lived held public offices that were entrusted

only to physicians and surgeons and was called by the district attorney as a medical expert and also in consultation as a physician by his colleagues.

We have examined the evidence in these two cases of Cabrera and Rincón and it does not convince us that they practiced as physicians and surgeons openly and constantly in the community for five years prior to 1911.

All of the evidence is oral. Not one of the prescriptions said to have been given by them was put in evidence. Not a single entry of such prescriptions in the books of the drugstores where it is said they were filled was presented. No member of the profession appeared in court to testify that the defendants had acted as physicians and surgeons. No public document executed in the five years prior to 1911 and showing directly or indirectly that the profession of the defendants was that of physician and surgeon was offered in evidence. The defendants may have clandestinely prescribed for or treated patients and perhaps they had and have sufficient qualifications; perhaps in abnormal situations the community took advantage of such knowledge, but from the evidence it does not appear clearly, as is necessary, that they practiced medicine and surgery in the manner stated in construing the law during the time fixed therein. The evidence in this class of cases must be full and convincing. Five years of constant practice of medicine and surgery must necessarily leave such a series of facts and documents that the evidence required can be very easily produced. What the evidence in these cases shows convincingly is that the two defendants are two intelligent pharmacists who once in a while have gone beyond the scope of their profession and entered the field of medicine. That is all, and it was not for such cases that the Legislature made the exception.

The judgments appealed from must be affirmed.

Mr. Justice Aldrey concurred in the judgment.